HYDE, et al. v. BERGGREN, et al.

No. 43070 May 25, 1964 164 So. 2d 454

*Albert Sidney Johnston, Jr.,* Biloxi, for appellants.

*White, Buntin & Martin,* Gulfport, for appellee.

LEE, C. J.

Arthur L. Hyde and Janthal Investment Corporation, in their declaration, filed December 5, 1959, in the County Court of Harrison County, sought to recover from Oscar E. Berggren, and others, the sum of $1,000, the amount of a deposit by the plaintiffs on the purchase price of approximately 30 acres of land, which the defendants, under their contract, agreed to return upon their failure to furnish a merchantable title within a reasonable time and which title they failed to furnish as they had agreed so to do.

On motion of the defendants, the cause was transferred to the equity side of the docket; and, on December 18, 1959, three of the defendants filed their answer, denying that they did not have a valid title to the property. They admitted that their title to a portion of the property rested upon an unconfirmed tax title and averred that they had offered to procure a confirmation of this title at the January 1960 Term of the Chancery Court in order to make it merchantable and to provide the owner a policy of title insurance on the property; but, they averred that plaintiffs refused their offer. They made their answer a cross-bill and sought specific performance of the contract. The other defendant, Wade

Guice, the broker, in his answer, denied any default in the contract, and in his cross-bill prayed for specific performance and a decree for his interest in the property and a sale thereof, if necessary, to comply with such decree.

The motions of the plaintiffs to strike the cross-bills of the defendants, on the ground that the amount in controversy exceeded the jurisdictional amount of the court, were overruled. They then filed answers to the cross-bills, which embraced demurrers, challenging the sufficiency of the equity of the cross-bills, the lack of jurisdiction of the court, and the uncertainty of the terms of the contract for specific performance.

On February 24, 1960, the court received evidence as follows: The contract in question was dated September 29, 1959. The purchase price was $24,000 (with $1,000 down as a deposit) payable as follows:

"$5,000. cash (including the $1,000. deposit) and Ten (10) equal installments with 6% interest on the principal with pre-payment — non-penalty privilege". Only three of the seven articles of the contract are material here. They are as follows: "AND IT IS HEREBY AGREED: First — That in the event said purchaser shall fail to pay the balance of said purchase price, or complete said purchase as herein provided, the amounts paid hereon shall, at the option of the seller, be retained as liquidated and agreed damages.

"Second: That in the event the title to said property shall not prove merchantable, and said seller shall not perfect, or be able to perfect, the same within a reasonable time from this date the purchaser shall have the option of demanding and receiving back said deposit, and shall be released from all obligations hereunder. * * *

"Sixth: Time is the essence of this contract but the time for any act required to be done may be extended by mutual agreement."

A lawyer, Jules A. Schwan, on November 4, 1959, advised Janthal Investment Corporation that title was based on a tax sale, made in 1914, which had not been confirmed, and this would be necessary, by a suit in the Chancery Court of Harrison County, to make the title merchantable.

On November 5, 1959, A. S. Johnston, Jr., representing the purchasers, wrote a letter to White and White, attorneys, raising questions about the title and advising that the purchasers were anxious to obtain title insurance and FHA approval in the development of this property, and expressing concern that his client would not be able to obtain these benefits on account of the defect in the title.

On November 12, 1959, W. H. White acknowledged receipt of the letter from Johnston, in which he could not recall passing on the title to some property, presumably of a similar status. In this letter he then said: *"I have no objection to a confirmation suit, but I do not know that Mrs. Lopez and Mrs. Berggren desire to go to this expense.* So far as I know, the only possession has been in the way of paying taxes, sales of part of the land, open claim of ownership, etc. *Possibly Jules would approve for title insurance.* I believe you know my views on unconfirmed tax titles.

"Mr. Guice told me your clients are asking for their money back. I have not seen the contract, but it will be complied with. Possibly the purchase money could be put in a bank pending confirmation." (Emphasis supplied).

On November 13, 1959, Johnston wrote a letter to his clients, referring to a letter which he had received from W. H. White, and, in the course thereof, set out a copy of the above quotation from White's letter.

On November 14, 1959, Arthur L. Hyde, one of the purchasers, wrote Wade Guice, the realtor, that, upon the advice of their attorney, who had been in receipt

of advice from the attorney for the sellers of the property, "as per contract of purchase, it is hereby requested that due to the length of time involved in the securing of a title being confirmed, along with the uncertainty that seller would have the title confirmed, as expressed by the attorney for seller, the Janthal Investment Corporation seeks the return of the deposit given in the purchase of this property."

The court then, as a result of a pretrial conference, directed that the only evidence to be heard by him at that time would be on the question of the furnishing by the cross-complainants of a merchantable title. On this subject, both Knox White and A. S. Johnston, Jr., testified. White stated that he had obtained the abstract about a month before; that the descriptions were "a little confused" and it took him about two weeks to cure them; that the tax sale was on 20 acres of this property in 1914; that the property had been assessed to "Unknown", and he had tried to find out the owner. His informant said that he "believed" but could not swear who was the owner of the property. The confirmation suit had not been filed, and he had no assurance that the title would be confirmed, other than the usual events in such matters.

In the course of Johnston's testimony the court asked if there was a possibility that the title could be confirmed by the chancery court, and the answer was that there was a possibility, but it would be unreasonable to require such a delay in regard to this property. He further said that the title depended not on adverse possession but on the record alone; and that the purchasers had asked for a return of their money before they had any assurance that the sellers would have the title confirmed and pay the expenses thereof.

The court, in an oral opinion, held that there was little dispute in the facts; that the defendants had already been diligent and had made a sufficient tender

of a merchantable title; that if they would file the confirmation suit within 10 days and prosecute it successfully in either the March or May 1960 terms of the Chancery Court, they would be entitled to specific performance; that, if this was not done, he would enter judgment in favor of the purchasers for $1,000 and interest thereon; and that the terms on the deferred payment would be determined at that time. This order was entered on February 26, 1960.

On May 23, 1960, there was a further hearing of this matter in the county court. The defendants and cross-complainants introduced a certified copy of a final decree of the chancery court, allegedly confirming the title to the property in question. They also offered proposed warranty deeds, conveying the property to the plaintiffs. Wade Guice and others testified that the ten equal installments, as referred to in the contract, were intended to be "ten equal annual installments". Finally they offered a Binder of Lawyers Title Insurance Corporation for a policy of title insurance on the property in question. A significant provision of that binder recites that it "is delivered and accepted upon the understanding that you have no personal knowledge or intimation of any defect, objection, lien, or encumbrance affecting said premises other than those shown under Schedule B hereof, * * *".

The court, on May 27, 1960, ordered and adjudicated specific performance, after correcting the contract so as to provide payment of the balance in ten equal annual installments, together with the necessary power and authority to enforce the same.

The plaintiffs appealed to the Chancery Court of the county. That court, on September 7, 1962, reversed the decree of the county court insofar as it ordered specific performance and the enforcement thereof, but decreed that the sellers should be allowed to retain the $1,000 deposit of earnest money. A petition for re-

hearing, having been denied, the purchasers have prosecuted their appeal to this Court. There is no appeal or cross appeal by the sellers.

The appellants, in this Court, have assigned and argued several alleged errors, but it is necessary to consider only the assignment that the chancery court committed manifest error ''in not rendering a decree in favor of the appellants for the return of their deposit of $1,000 plus interest and all costs of suit''.

It is evident from this record that the appellants were purchasing this property for development purposes in the expectation of obtaining FHA approval and financing. The contract was executed on September 29, 1959. It was November 4 before advice came that the title depended upon a tax sale, and that the alleged owner was unknown. When counsel for purchasers sought information from counsel for sellers, a confirmation of the tax title being manifest, he was advised that it was not known at that time whether the sellers would desire to go to the necessary expense. This information was immediately communicated to the purchasers, and, on November 14, one of the purchasers notified the realtor Wade Guice, that on account of the length of time and the uncertainty of the title, the purchasers wanted their money back. When the defendants filed their answers and cross bills on December 19, they denied that they did not have a valid title to the property. At the first hearing on February 24, 1960, no confirmation suit had been filed, and it was not even ready to be filed. The court allowed the sellers until the May 1960 Term of the court to file and consummate the suit. The date of the final decree of confirmation was May 10, 1960. In other words, it had taken from September 29, 1959, until May 10, 1960, to obtain what was thought to be a merchantable title.

However, when the decree is observed, the following recitation is contained therein: ''This cause coming on

this day to be heard on the Bill of Complaint, and Exhibits thereto, Answer and agreement of trial of the State of Mississippi, Decree Pro Confesso against the defendants, Eurilda S. Lopez, Wilda Lopez Borring, Lazaro Lopez, Jr., John B. Lopez, Paul Froede, Patricia Tarr Leavitt, Barbara Tarr Kroninger, Maxine Mahony, and *any and all persons having or claiming any right, title or interest,* legal or equitable, in or to the following described land sold for taxes on April 6, 1914, viz: Lot South by Public Road, East by Jackson County Line, North by Roduquise, West by Fountain, Section 16/21 Township 7 South, Range 9 West, Harrison County, Mississippi, Affidavit In Re Military Service, process in personam, and by *publication of all of the defendants, including Michael Lopez, a minor,* and on oral and documentary evidence, and the Court having heard and considered same and finding that it has jurisdiction of the subject matter and the parties, and that the complainants are entitled to the relief prayed for,'' and then quieted and confirmed the title of the complainants in the property as described against the State and all other defendants named, both known and unknown.

Both trial courts held that a merchantable title was tendered or offered within a reasonable time.

Griffith's Mississippi Chancery Practice, 2d Ed., Sec. 522, pp. 534-6, discusses the principles respecting tender. On page 535 thereof the writer says: ''Whatever the suit may be, when by it a party seeks to compel performance by another the complainant must tender or offer to do whatever was or is necessary to the right to have such performance; * * *.''

 ██ Reasonable time is a relative term. However, in view of all the circumstances of this case and the manifest object and purpose in the acquisition of the property being evidence, this Court does not think that the belated efforts of the sellers warranted a finding

that a merchantable title would be, or was, furnished in a reasonable time.

Besides, when Section 1314, Code of 1942 Rec., is viewed in its entirety, as applied to the terms of the decree in this instance and in connection with Section 1391 of the Code, it is obvious that certain rights of appeal remained, which, at that time, could still affect the validity of this title.

Consequently, the cause is reversed and a decree will be entered here requiring the appellees to return to the appellants the sum of $1,000, and six percent interest per annum from December 5, 1959, the appellees to pay all costs.

Reversed and decree here for appellants.

*Gillespie, McElroy, Rodgers and Brady, JJ.,* concur.